## Case No. 6,494.

### HILL v. LOW.

.[4 Wash. C. C. 327.] 1

Circuit Court, E. D. Pennsylvania.   Oct. Term, 1822.

FUGITIVE SLAVE—OBSTRUCTION TO CAPTURE.

1. In an action for the penalty by the owner of a fugitive slave, for obstructing the plaintiff in seizing and arresting his slave, under the fourth section of the act of congress of February 12, 1793, c. 152 [2 Bi. & D. 332; 1 Stat. 305], whether the alleged slave owes service or labour, is a question for the jury to decide.

2. If the defendant, knowingly, obstructs the owner or his agent in seizing the fugitive, he cannot excuse himself against the penalty, by pleading ignorance of the law, or an honest belief, that the person was not a fugitive from service or labour.

[Approved in Johnson v. Tompkins, Case, No. 7,416. Cited in Jones v. Van Zandt, 5 How. (46 U. S.) 230.]

[Cited in Sim's Case, 7 Cush. 306; Ela v. Smith, 5 Gray, 131.]

3. Mere obstruction, hindrance, or interruption, is no offence under this act, unless it be interposed to prevent a seizure in the first instance, or a recapture in case the fugitive, after seizure, should escape; and the offence in such case would be complete, although the owner should ultimately succeed in making the arrest.

4. After the arrest is consummated, no subsequent obstruction, whilst the custody continues, though it should afford an opportunity for escape, amounts to this offence, though it might possibly entitle the owner to an action at common law; or, if an escape in consequence of the obstruction should happen, it might amount to the other offence of a rescue.

This cause came before the court upon exceptions taken to the charge of the judge of the district court upon the first count in the declaration, judgment having been entered for the defendant upon the other counts. This count states, that a person held to labour in the state of Maryland, by the name of Ezekiel, had escaped into the state of Pennsylvania, and that the plaintiff, being the person to whom such labour of the said fugitive was and is due, did, on a certain day, at Philadelphia, seize and arrest the said fugitive from labour, to take him before a magistrate of the said city, in order to prove before him that the person so seized and arrested did, under the laws of the state of Maryland, from which he fled, owe service and labour to the plaintiff, the person then and there claiming the said fugitive; the defendant did then and there knowingly and willingly, obstruct and hinder the plaintiff in so securing and arresting the said fugitive when so arrested, pursuant to the authority given him by an act of congress; contrary to the form, &c.; whereby the defendant became liable to pay to the plaintiff the sum of $500, &c. &c.   Plea, nil debet.   Verdict and judgment for plaintiff on the first count.

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

WASHINGTON, Circuit Justice.   The various objections which have been made by the counsel for the plaintiff in error to the charge delivered by the judge of the district court in this cause, have induced me to examine it by sections, and with all the attention of which I am capable.   The case, as it was presented to the court at the first trial, required of the judge a construction of every part of the act of congress of the 12th of February 1793; and the light which he has shed upon a subject which, so far as I am informed, had never before been submitted to judicial investigation, relieves me from the necessity of travelling over the whole ground; especially as the questions which I have to consider were confined, at the last trial, to the case made by the first count, the substance of which has been stated.

There are two principles laid down in the charge in which I cannot concur, and to these I shall confine this opinion.   I yield my entire assent to every other part of the charge.

1. The first objectionable part of the charge is that in which the judge is made to say that "whether the said Ezekiel was a slave, or owed service to the plaintiff, was not a question for the jury to decide, but was a question to be decided by the magistrate."   It is very clear, I think, that this position is as much opposed to the policy, as it is to the words of the act of congress on which this action is founded.   For it is the person "to whom the labour or service of the fugitive is due," or his agent, who is authorized by the third section to seize such fugitive, and to take him before the magistrate: and although the fourth section, in describing the person against whom the offences stated in it may be committed and who may sue for the penalty, styles him the "claimant," yet the pronoun "such" plainly refers for its antecedent, to the claimant mentioned in the third section; where he is described to be the person to whom the service of the fugitive is due, and to whom the certificate is to be given by the magistrate, if proof of the service due is made to his satisfaction.   The declaration pursues the act of congress, by alleging that the plaintiff was the person claiming the fugitive so seized and arrested, and to whom he owed labour and service; which allegations, being put in issue by the plea of nil debet, it was incumbent on the plaintiff to prove.   The expression I have used.—that the judge was "made" to lay down the position to which this objection is taken, was founded upon his own declaration in court, that it was not his intention to deliver the opinion imputed to him, but that, on the contrary, he dissented from it; that the sentiments which he had expressed were misunderstood by the counsel, and that the mistake was overlooked by himself, in a too hasty reading of the bill of exceptions.   I have no doubt but that the observations of the judge upon this subject were made in reference to the particular case before him, in

which the fact of service due by the fugitive to the plaintiff was so fully established, as not to have been controverted at the bar; but which were, from misapprehension of the counsel, supposed to lay down a general principle of law applicable to all cases. I am confirmed in this opinion, not only by concessions made by the counsel for the plaintiff in error in this court, but by the declarations of the judge in his charge on the first trial, "that he considered the plaintiff's title to the fugitive sufficiently proved to have warranted the magistrate in granting him a certificate, and that he would not himself have hesitated to grant it." I must, nevertheless, confine my knowledge of this case to the record, and finding there this objectionable direction to the jury, my duty compels me to condemn it. Connected with the preceding subject, the charge proceeds to state, that "the intention, the mala mens, was not here inquirable into;" by which, I do not understand the judge to mean that an unintentional obstruction would render the person an offender under the law; but that if the defendant knowingly and willingly obstructed the plaintiff in seizing the fugitive, he could not allege, in his defence, ignorance of the law, or even an honest belief that the person claimed as a fugitive, did not, in fact, owe service to the claimant, and that such matters were unfit for the inquiry of the jury; and that it was sufficient to bring the defendant within the provisions of the law, if, having notice, either by the verbal declarations of those who had the fugitive in custody or were attempting to seize him, or by circumstances brought home to the defendant, that the person was a fugitive, or was arrested as such; he persisted, nevertheless, in obstructing the seizure, or in making a rescue. I collect this to have been the meaning of the judge from other parts of the charge; and thus explained, I entirely concur in that part of the direction to the jury.

2. The remaining objection to the charge is to those parts of it in which the following sentiments are expressed: "That the question for the jury was, whether the obstruction was such as prevented the free will of the master in arresting, and safe keeping the fugitive;" "that whilst proceeding to the place intended for safe custody, it is unlawful to hinder or obstruct the passage of the owner or his agent, or by force, or violence, or assemblage of people, to intimidate, or cause the claimant to go out of his course, and thus afford opportunity for escape. This, in effect, is an obstruction, hindrance, and restraint on the will of the claimant, and takes from him the power of safe keeping, till he has obtained a certificate for removal." There are some other parts of the charge which correspond with the sentiments thus expressed, and I understand the principle which they meant to lay down to be, that if the claimant, or his agent, be interrupted, or hindered, in the manner described in the

charge, after the arrest, and whilst the claimant, having the fugitive in custody, is conducting him to the magistrate, or to a place for safe keeping, the offence of obstructing the claimant in seizing or arresting the fugitive, is committed. To this doctrine I cannot accede. Mere obstruction, hindrance, or interruption, is no offence under this act of congress, unless it be interposed previous to, or whilst the claimant, or his agent, is in the act of seizing or arresting the fugitive, or is endeavouring to make such seizure; and I consider the offence to be complete, if knowingly and willingly committed, although the claimant should ultimately succeed in arresting, or recovering possession of the fugitive. The act of seizing may be effected, either by the physical restraint of the fugitive, or by a moral restraint, as if the fugitive voluntarily, or by intimidation, accompany the person taking him, without requiring personal coercion. But whether the arrest be in the one way, or the other, being once consummated, no subsequent obstruction, whilst the custody continues, although it should afford an opportunity for escape, or be a restraint upon the free will of the claimant, can constitute the offence of obstruction or hindrance mentioned in, or intended by the fourth section of this act. Such conduct may subject the party to an action at common law, (as to which, however, I give no opinion at this time) or, if an escape of the fugitive should be the consequence of it, it might amount to the other offence of a rescue, within the same section, if the escape was effected by actual force, or intimidation; and in relation to this latter offence, I entirely concur in the opinion of the district judge, as stated in the charge. I by no means assent to the argument of the counsel for the plaintiff in error, that the offence of obstruction or hindrance cannot be committed after the first seizure has been completed; for if the fugitive, being once in custody, should, of his own accord, evade his keeper and escape, or, being excited by others to do so, should make the attempt, and an obstruction should be interposed to hinder the recapture of the fugitive, the offence would be precisely the same, as it would have been, had the same obstruction been interposed to the original seizure or arrest; and so on as often as the like hindrance may occur in repeated attempts to make the seizure after an escape had taken place. To render my meaning as intelligible to others as it is to myself, I will exemplify it by the following hypothetical case; for I have not read, nor have I paid the slightest attention to the evidence in this cause; thinking it forms, and ought to have formed, no part of this record. If the person in custody escape, or is excited by others to fly, and does so, this is not an obstruction within the meaning of the law; and whether a rescue or not, would depend upon the circumstances before mentioned as constituting that offence. But if the persons who promoted the escape,

or others, should knowingly and willingly impede or hinder the claimant, or his agents, in pursuing the fugitive, for the purpose of making a recapture, this would be an obstruction strictly within the words, and what I conceive to be the spirit of the law. Should the claimant, or his agents, in such a case, turn their backs upon the fugitive, and abandon all attempt to make a new seizure, not being hindered or obstructed by others, the mere stoppage, or interruption of the claimant, or the exciting of the person in custody to fly, would not amount to the offence stated in the count upon which this trial took place. I ought to observe, that much of the doctrine stated in this part of the opinion is contained in that part of the charge, in which the judge says, "if the fugitive be rescued, or escape from the first arrest, the same rules and principles apply to rescue or recapture, as has been mentioned in relation to the first taking. If the evidence do not amount to actual rescue; obstruction or hindrance (that is, as I understand it, in relation to the recapture) equally incurs the penalty." I am, upon the whole, of opinion, that, for these reasons, there is error in the judgment of the court below, that the same must be reversed with costs, and the cause be remitted to the district court, that a venire de novo may issue, and further proceedings be had thereon.